UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE VERDUN; IAN ANOUSH GOLKAR, on behalf of themselves and a class of all others similarly situated., <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF SAN DIEGO; SAN DIEGO POLICE DEPARTMENT; Does 1-130, inclusive <br><br>Defendants. | Case No.: 3:19-cv-00839-AJB-WVG <br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br>(Doc. No. 6) |

Presently before the Court is Defendants City of San Diego and San Diego Police Department's ("Defendants") motion to dismiss Plaintiffs Andre Verdun and Ian Anoush Golkar's ("Plaintiffs") complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 6.) Plaintiffs oppose the motion. (Doc. No. 12.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## **BACKGROUND**

This dispute centers on law enforcement's practice of marking the tires of parked vehicles with chalk to determine whether the vehicle has overstayed the time limit of city-owned parking spaces. Specifically, Plaintiffs challenge Defendants' practice of tire

chalking as an unreasonable search in violation of the Fourth Amendment of the United States Constitution. (Doc. No. 1 ¶ 33.) Plaintiffs claim the placement of chalk marks on the tires of privately-owned vehicles for surveillance purposes physically violates the owners' property rights and caused constitutional and monetary harm. (*Id.* ¶ 35.)

On May 3, 2019, Plaintiffs instituted this lawsuit seeking injunctive relief in this Court by filing the operative complaint alleging a cause of action pursuant to 42 U.S.C § 1983, civil action for deprivation of rights under the Fourth Amendment of the United States Constitution. (Doc. No. 1 ¶ 33.) Defendants filed the instant Motion to Dismiss the Class Action Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] on June 19, 2019. (Doc. No. 6 at 10.) Plaintiffs oppose Defendants' Motion to Dismiss, and Defendants filed a reply. (Doc. Nos. 12, 13.) This order follows.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the

---

[1] All references to "Rule" are to the Federal Rules of Civil Procedure.

nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true "merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend, unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## **DISCUSSION**

Defendants move for dismissal on the basis that Plaintiffs have not stated a violation of their Fourth Amendment rights on which to hinge a § 1983 action, and even if they did, Defendants' actions fall within an exception to the warrant requirement of the Fourth Amendment. (Doc. No. 6, 13.) The Court will consider each argument in turn.

**I. Violation of Civil Rights Claim: 42 U.S.C. § 1983**

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (*1988*) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To act under color of state law, a defendant must exercise "power 'possessed by virtue of state law,'" and his or her actions were "made possible 'only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

/ / /

/ / /

### A. *Fourth Amendment Violation*

The foundation of Plaintiffs' asserted violation of the Fourth Amendment rests on trespass to Plaintiffs' personal property through the placement of chalk marks on the tires of their vehicles while parked in city-owned parking spaces. (Doc. Nos. 1, 12.) Plaintiffs primarily rely on the recent decision of *Taylor v. Saginaw* to support their position. 922 F.3d 328 (6th Cir. 2019). The Sixth Circuit considered similar circumstances and held that chalking of tires to enforce parking violations was indeed a search under the Fourth Amendment. *Id.* at 336.

To determine whether a Fourth Amendment violation has occurred, the Court looks first to "whether the alleged government conduct constitutes a search within the meaning of the [] Amendment; and second, whether the search was reasonable." *Taylor*, 922 F.3d at 332. Plaintiffs have purported that a search has occurred because of a physical trespass. (Doc. No. 1 ¶¶ 34–35.) Although this "common-law trespassory" test is not the exclusive means of analyzing a Fourth Amendment violation, it is the argument the Plaintiffs have set forth and the argument that the Court addresses today. *United States v. Jones,* 565 U.S. 400, 401 (2012). Under *Jones*, when a governmental intrusion includes a *physical* intrusion, a search occurs when that intrusion (1) trespasses upon a constitutionally protected area (2) to obtain information. *Id.* at 404–05; *see also Nassiri v. Colvin*, No. 15CV0583-WQH-NLS, 2015 WL 5098470, at *10 (S.D. Cal. Aug. 31, 2015).

Plaintiffs reliance on the Sixth Circuit's decision in *Taylor,* although persuasive, is not binding on the Court. Namely, the Sixth Circuit relied on the Restatement (Second) of Torts to define trespass. *Taylor,* 922 F.3d at 332–33. Although this Court and the Ninth Circuit have not exclusively relied on the Restatement's definition of trespass, the consensus of the definition of trespass is largely the same between the Sixth and Ninth Circuits and shall be applied here. *United States v. Milner*, 583 F.3d 1174, 1182–83 (9th Cir. 2008) (finding Federal common law governs an action for trespass and "that law generally comports with the Restatement of Torts"); *California v. Kinder Morgan Energy Partners, L.P.*, No. 07-CV-1883-MMA(WVG), 2013 WL 314825, at *67 (S.D. Cal. Jan.

25, 2013) (citing California caselaw and the Restatement (Second) of Torts to define trespass).

Considering *Jones,* a technical trespass occurs when there is unauthorized physical intrusion. *Jones,* 565 U.S. at 420 (Sotomayor, J., concurring). Although *Jones* does not outline the boundaries of how intrusive this unauthorized physical intrusion must be to be considered a trespass, the Supreme Court found that the physical contact of a GPS beeper to the undercarriage of a car was sufficient, even though the actual contact of the beeper did not cause any damage to the defendant's effect. *Id.* at 403.

Here, considering whether the Defendants' conduct was trespassory, the Court finds Plaintiffs have pled sufficient facts to establish their claim. Defendants physically placed chalk marks on the tires of vehicles. (Doc. No. 6 at 9.) Although this contact does not cause outward damage to Plaintiffs' property, it is a technical trespass nonetheless.

Moreover, constitutionally protected areas include persons' papers, houses, and effects. U.S. Const. amend. IV. This case involves constitutionally protected personal property – personal vehicles – belonging to the Plaintiffs.

Once a technical trespass has been established, it must also be shown that the trespass is conjoined with an attempt to obtain information. *Id.* at 408 n.5. This is a fairly evident point established both in *Jones* and here. In *Jones*, the police used the installed beeper to track the defendant for investigatory purposes. *Id.* at 403. Here, the police chalked Plaintiffs' tires to obtain information as to whether Plaintiffs violated the parking limitations in order to issue a citation. (Doc. No. 1 ¶ 33.)

Having found that Plaintiffs have pled sufficient facts to allege a violation of the Fourth Amendment, the Court now considers the reasonableness of the search. Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are unreasonable under the Fourth Amendment unless an exception to the warrant requirement applies. *Terry v. Ohio,* 392 U.S. 1, 19 (1968). In other words, if the Defendants' conduct is justified by an exception then their conduct is valid under the Fourth Amendment. *Id.*

## II. Exceptions to the Warrant Requirement of the Fourth Amendment

The Sixth Circuit in *Taylor* made clear that tire chalking without a warrant should not be understood to violate the Fourth Amendment as a matter of law. *Taylor,* 922 F.3d at 336. That Court addressed the community caretaking exception in relation to the pled facts and held that at the pleading stage, it was not clear as a matter of law that the community caretaking exception justified the defendant's conduct. *Id.* In other words, it declined to dismiss the plaintiffs' entire action pursuant to a warrant exception based only on the facts pled. *Id.* The Court is inclined to hold similarly here.

### A. *The Community Caretaker Exception*

As outlined in *Cady v. Dombrowski*, the community caretaking doctrine allows law enforcement to act without a warrant when they are acting totally divorced from investigation or acquisition of evidence relating the violation of a criminal statute. 413 U.S 433, 441 (1973). This doctrine was established to recognize law enforcement's duty to preserve public safety. *Id.* It typically applies in situations where there is a safety threat but not a threat of a crime. *Id.; see also Cady,* 413 U.S. at 437 (upholding the police's search of a vehicle likely containing a firearm, even though possession of the firearm was not a crime); *People v. Ray,* 21 Cal. 4th 464, 467 (1999) (finding that police returning lost children to their parents was a community caretaking function).

Here, however, it is not clear that the doctrine applies. Although tire chalking is arguably divorced from investigation, it is unclear whether there is a public safety risk to justify the Defendants' actions. Defendants have merely offered that it applies to address the "immediate need for safety in the City's rights of way." (Doc. No. 6 at 24.) Accordingly, the Court finds Defendants are not entitled to dismissal under the community caretaking doctrine at this juncture.

### B. *The Special Needs Exception*

The special needs doctrine applies if the governmental search is in furtherance of a special need beyond that of general law enforcement. *Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987); *see also City of Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000); *Ferguson v.*

*City of Charleston,* 532 U.S. 67, 79 (2001). This doctrine allows the government to conduct a warrantless search when special needs make obtaining a warrant for probable cause impracticable. *Griffin,* 483 U.S. at 873; *New Jersey v. T.L.O.,* 469 U.S. 325, 351 (1985).

To determine whether this doctrine applies, the court must inquire as to the purpose of the government's actions at a programmatic level. *Edmond,* 531 U.S. at 46–47; *see also United States v. Orozco,* 858 F.3d 1204, 1212 (9th Cir. 2017). If the primary purpose is not a general interest in crime control, the court should then conduct a fact-specific analysis into the reasonableness of the program considering (1) the government's interest, (2) the immediacy of the government's interest, and (3) the intrusion into the individual's privacy interests. *Sanchez v. Cnty. of San Diego,* 464 F.3d 916, 926–27 (9th Cir. 2006); *Veronica Sch. Dist 47J v. Acton,* 515 U.S. 646, 652–53 (1995).

Here, considering the justification of Defendants' actions, the Court finds its primary purpose is not crime control. Defendants argue that although there is an enforcement aspect of Defendants' practice of tire chalking, there are other public interest motivations for the practice. (Doc. No. 6 at 20.) Specifically, chalking tires is intended to "maintain order in the public ways" and ensure the free flow of traffic. *Id.* Thus, the Court now examines the reasonableness of Defendants' actions using the above factors.

The Court turns first to analyzing the reasonableness of the government's purported interest in tire chalking. Defendants' stated interest in tire chalking is to maintain the free flow of traffic, preserve lawful order on the City's pubic ways, and to sustain the "peaceable operation" of the city. (Doc. No. 6 at 20, 22.) These justifications demonstrate a valid governmental interest in the practice of tire chalking.

However, the Court finds Plaintiffs' privacy interests are more significant than Defendants purport. Defendants offer authority discussing the automobile exception and individuals' diminished expectations of privacy in vehicles as compared to homes. *See, e.g.*, *Cardwell v. Lewis,* 417 U.S. 583, 590 (1974); *South Dakota v. Opperman,* 428 U.S. 364, 368 (1976). Although individuals maintain a decreased expectation of privacy in their vehicles, it does not eliminate their privacy expectations altogether. Given the

7

consideration of the factors, the Court finds it is improper to dismiss Plaintiffs' claims pursuant to the special needs doctrine at this juncture.

### C. Implied License

Defendants also rely on the notion of an implied license or invitation for law enforcement to act as a private citizen while making contact with the vehicles. (Doc. No. 6 at 25.) Specifically, Defendants analogize the police's tire chalking here with the police's ability to stand on an individual's porch and knock on their front door, or a private citizen's ability to touch another's car to distribute advertising. *Id.; see e.g.*, *Florida v. Jardines,* 569 U.S. 1, 8 (2013). However, this implied license is *not* extended to any investigatory action. The Supreme Court noted, "[t]o find a visitor knocking on the door is routine . . . to find that same visitor exploring the front [yard] . . . would inspire most of us to, well, call the police." *Id.* at 9. It is possible that law enforcement has an implied license to touch a vehicle in the same manner, and for the same purpose, as a private citizen distributing advertisements, but does not have an implied license to make contact for the purpose of investigating whether a violation of law has occurred. Defendants' position seemingly ignores the purpose behind the two types of action: one is innocuous while the other is investigatory. On its face, the practice of chalking tires seems more investigatory than innocuous, however, the parties have not offered sufficient evidence to conclusively establish the matter. Thus, at this stage of litigation, Defendants are not entitled to dismissal of Plaintiffs' under the doctrine of implied license.

## III. San Diego Police Department as a Proper Defendant

42 U.S.C. § 1983 permits suit against a "person" acting under the color of law. While local governmental units such as cities or municipalities are considered "persons," municipal departments and sub-units are not. *Compare Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70 (1989), *with United States v. Kama,* 394 F.3d 1236, 1239 (9th Cir. 2005) (holding municipal police departments are not considered "persons" within the meaning of 42 U.S.C§ 1983).

Here, the municipal police department, San Diego Police Department, is named as a defendant in addition to the municipality of the City of San Diego. (Doc. No. 1 ¶ 4.) For this reason, the Court **GRANTS** Defendants' Motion to Dismiss the San Diego Police Department as an improper defendant **WITHOUT LEAVE TO AMEND**.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss, (Doc. No. 6). The Court **DENIES** Defendants' motion to dismiss on the basis Plaintiffs have stated a claim upon which relief could be granted. The Court **DIMISSES** the Defendant San Diego Police Department **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: March 21, 2020

Hon. Anthony J. Battaglia
United States District Judge