UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE VERDUN; IAN ANOUSH GOLKAR, on behalf of themselves and a class of all others similarly situated., <br><br>Plaintiffs, <br>v. <br>CITY OF SAN DIEGO; Does 1-130, inclusive <br><br>Defendants. | Case No.: 3:19-cv-00839-AJB-WVG <br><br>**ORDER GRANTING THE CITY OF SAN DIEGO'S MOTION FOR SUMMARY JUDGMENT** <br><br>(Doc. No. 27) |

Before the Court is Defendant City of San Diego's ("City") motion for summary judgment against Plaintiffs Andre Verdun and Ian Anoush Golkar's ("Plaintiffs") pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 27.) The Court finds the motion suitable for determination on the papers and without oral argument. Thus, the motion hearing on January 21, 2021 is **VACATED**. Civil Local R. 7.1.d.1. For the reasons set forth below, the Court **GRANTS** the City's motion.

//
//
//
//

## I. BACKGROUND[1]

Throughout its jurisdictional boundaries, the City owns thousands of parking spaces located on City-owned property. Access to, and use of, the City's parking spaces are governed by provisions of the San Diego Municipal Code ("SDMC"). A driver's violation of a SDMC parking provision is a regulatory violation, which may result in a fine. Pursuant to SDMC section 86.0106, the City is authorized to establish time limits for its parking spaces. The time limits for parking in these spaces are illustrated in signs providing notice of the time limits.

The regulation of parking falls within the City's police powers, and the City has authority to enforce parking ordinances within its jurisdiction. The City uses "chalking" as a method of enforcing the time limit for its parking spaces. While a vehicle is parked in a space, a parking enforcement officer (PEO) places an impermanent chalk mark of no more than a few inches on the tread of one of the vehicle's tires. The PEO is trained to mark every vehicle in the area; the PEO does not have discretion to choose which vehicles to mark. After allowing the posted amount of time allowed for the area to expire, the PEO returns and examines each vehicle to determine whether the mark on the tire tread is undisturbed. If the mark is undisturbed, the PEO knows that the driver violated the time limit for the City's parking space. Any vehicle parked in violation of the posted time limit may be issued a citation.

This litigation centers on the City's method of chalking the tires of parked vehicles to determine whether the vehicle has overstayed the parking space's time limit. Specifically, Plaintiffs challenge the City's tire chalking as an unreasonable search in violation of the Fourth Amendment to the United States Constitution. Plaintiffs claim that the City's placement of chalk marks on the tires of privately-owned vehicles for

---

[1] The following facts are undisputed. (Doc. Nos. 27-1 at 10–17; 33 at 13.)

surveillance purposes violates the owners' property rights and caused constitutional and monetary harm.

On May 3, 2019, Plaintiffs commenced this lawsuit by filing the operative complaint, wherein they allege a cause of action pursuant to 42 U.S.C § 1983, namely, a civil action for deprivation of rights under the Fourth Amendment to the United States Constitution. On March 21, 2020, the Court denied the City's motion to dismiss Plaintiffs' complaint, finding that at the pleading stage of litigation, Plaintiffs pled sufficient facts to allege a violation of the Fourth Amendment. And while the City argued that its practice is justified under certain exceptions to the general warrant requirement, the Court deemed it improper, at the motion to dismiss stage, to dismiss Plaintiffs' entire action pursuant to a warrant exception based only on the facts pled.

This case is now beyond the pleading stage. On October 23, 2020, the City filed the instant motion for summary judgment. (Doc. No. 27.) Plaintiffs filed an opposition to the City's motion, to which the City replied. (Doc. Nos. 33, 38.) This order follows.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment permits a court to enter judgment on factually unsupported claims, *see Celotex Corp. v. Catrett*, 477 U.S. 319, 327 (1986), and may also be used on affirmative defenses. *Dam v. Gen'l. Elec. Co.*, 265 F.2d 612, 614 (9th Cir. 1958). Granting summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that

summary judgment is not appropriate. *See Celotex,* 477 U.S. at 322, 324. The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.; Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir. 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to survive summary judgment." *Anderson*, 477 U.S. at 252. A party opposing summary judgment must come forward with "significant probative evidence tending to support its claim that material, triable issues of fact remain." *Sanchez v. Vild*, 891 F.2d 240, 242 (1989).

### III. DISCUSSION

To prevail on a civil rights claim pursuant to 42 U.S.C. § 1983, Plaintiffs must show "the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Consequently, if the City establishes that Plaintiffs cannot meet their burden to show that tire chalking violates the Fourth Amendment, Plaintiffs' Section 1983 claim necessarily fails. The City seeks to establish just that.

The Fourth Amendment to the United States Constitution guards against unreasonable searches and seizures. It states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In analyzing a Fourth Amendment claim, the Court applies a two-step framework, which considers (1) whether a search or seizure occurred, and if so, (2) whether the search or seizure was unreasonable. *See Whalen v. McMullen*, 907 F.3d 1139, 1146, 1151 (9th Cir. 2018) (evaluating whether a "[s]earch within the meaning of

the Fourth Amendment" occurred and whether the "particular search me[t] the reasonableness standard").

In this case, the City moves for summary judgment, arguing that it is entitled to judgment as a matter of law because chalking tires does not amount to a search for purposes of the Fourth Amendment. (Doc. No. 27-1 at 19–20.)[2] The City further argues that even assuming that tire chalking is a search, it does not violate the Fourth Amendment because the City's conduct qualifies under an exception to the warrant requirement. (*Id.* at 24–40.) The Court considers these arguments in turn.

### A. "Search" Within the Meaning of the Fourth Amendment

In the Court's order denying the City's motion to dismiss, the Court found that—based on Plaintiffs' allegations that the City physically intruded on their parked vehicles by marking the tires with chalk to determine whether they violated the City's parking limitations—a "search" within the meaning of the Fourth Amendment occurred in this case. (Doc. No. 15 at 5.) In so finding, the Court relied on the common law trespassory test applied in *United States v. Jones*, 565 U.S. 400, 404–05 (2012). Under *Jones*, when a governmental intrusion includes a physical intrusion, a search occurs when that intrusion (1) trespasses upon a constitutionally protected area (2) to obtain information. *Id.* at 404–05.

Although *Jones* did not outline the boundaries of how intrusive an unauthorized physical intrusion must be to be considered a trespass, the Supreme Court held that the act of placing a GPS beeper to the undercarriage of a car amounted to a search, even though the actual contact of the beeper did not cause any damage to the defendant's effect. 565 U.S. at 403. The Court affirms its previous finding that that the City's conduct in this case is sufficiently analogous to that in *Jones*.

---

[2] The pinpoint page citations in this decision refer to the ECF-generated page numbers that appear at the top of each filing.

1    Here, like in *Jones*, the City intentionally made physical contact with the exterior of
2 Plaintiffs' vehicles. Specifically, the City placed chalk marks on the vehicles' tires, and
3 while this contact did not cause outward damage to the vehicles, it is nonetheless a trespass.
4 *See generally Jones*, 565 U.S. at 405 ("[O]ur law holds the property of every man so sacred,
5 that no man can set his foot upon his neighbour's close without his leave; if he does he is
6 a trespasser, **though he does no damage at all**; if he will tread upon his neighbour's
7 ground, he must justify it by law.") (emphasis added) (quoting *Entick v. Carrington*, 95
8 Eng. Rep. 807, 817 (C.P. 1765)). As in *Jones*, the officers in this case "did *more* than
9 conduct a visual inspection" of Plaintiffs' vehicles. *Id.* at 410 (emphasis in original). By
10 physically and deliberately chalking the vehicles' tires, the City "encroached on a protected
11 area." *Id.* "It is beyond dispute that a vehicle is an 'effect' as that term is used in the
12 Amendment." *Id.* at 404 (citation omitted).

13   The Court also finds persuasive that the Sixth Circuit in *Taylor v. City of Saginaw*
14 analyzed virtually identical circumstances and found that chalking of tires constitutes a
15 trespass "because the City made intentional physical contact with Taylor's vehicle" and
16 "this physical intrusion, regardless of how slight, constitutes common-law trespass." 922
17 F.3d 328, 333 (6th Cir. 2019) (citing *Jones*, 565 U.S. at 405 and adopting the Restatement
18 definition of trespass). Accordingly, as the City's physical intrusion against the exterior of
19 Plaintiffs' vehicles is akin to that which occurred in *Jones*, the Court finds that the City
20 effected a physical trespass on Plaintiffs' constitutionally protected effects.

21   Having found that a trespass occurred, the Court turns to whether the trespass is
22 conjoined with an attempt to obtain information. 565 U.S. at 408 n.5. ("Trespass alone does
23 not qualify, but there must be conjoined with that what was present here: an attempt to find
24 something or to obtain information."). Here, the answer is yes because the PEOs chalk tires
25 "to determine whether a vehicle overstayed the time limit for a City Parking Space." (Doc.
26 No. 27-1 at 12.) This information is then used to issue a citation pursuant to the City's
27 parking regulations. (*Id.*) Thus, because the City physically trespassed on Plaintiffs'
28

vehicles to obtain information, the Court finds that a search has occurred in this case. *See Jones*, 565 U.S. at 404–05; *Taylor*, 922 F.3d at 333.

The City has not presented evidence or argument sufficient to change the Court's determination. While the City urges the Court to consider "the privacy interests in the effects" (Doc. No. 27-1 at 21), the Ninth Circuit has explained that following the Supreme Court's decision in *Jones*, "when the government 'physically occupies private property for the purpose of obtaining information,' a Fourth Amendment search occurs, regardless whether the intrusion violated any reasonable expectation of privacy." *Whalen*, 907 F.3d at 1146 (alteration and citation omitted) (quoting *Jones*, 565 U.S. at 404). The City also requests the Court to "apply lessened constitutional scrutiny to the City's regulatory parking enforcement activities because the City is acting in a proprietary capacity when it enforces regulations governing City-owned parking spaces." (Doc. No. 38 at 11.) The Court, however, cannot discern what such lessened constitutional scrutiny in the context of a Fourth Amendment claim would look like.

To be sure, the City mentions in its brief that in the context of the First Amendment, "the Supreme Court ruled that when the government acts in a proprietary capacity, the proper level of scrutiny is the more relaxed reasonableness standard that examines whether the government action is arbitrary, capricious or invidious." (*Id.* at 10.) However, it is already well-settled that "the ultimate touchstone of the Fourth Amendment is 'reasonableness'[.]" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The Court therefore finds that application of the proposed lessened standard would not meaningfully differ from the reasonableness analysis employed in every Fourth Amendment case. *See S. Dakota v. Opperman*, 428 U.S. 364, 375 (1976) ("[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case[.]") (citing *Cooper v. State of Cal.*, 386 U.S. 58, 59 (1967)). Thus, having found that a search within the meaning of the Fourth Amendment occurred in this case, the Court considers the reasonableness of the search.

### B. Whether the Search was Reasonable

Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are unreasonable under the Fourth Amendment unless an exception to the warrant requirement applies. *Terry v. Ohio,* 392 U.S. 1, 19 (1968). Otherwise stated, if the City's conduct is justified by an exception then its conduct is valid under the Fourth Amendment. *Id.*

Here, the City contends that tire chalking is a dragnet search that is reasonable under the administrative search exception to the warrant requirement. (Doc. No. 27-1 at 25–35.) Plaintiffs concede that "tire chalking is essentially a 'dragnet' search, applied without discretion to choose vehicles or individualized suspicion." (Doc. No. 33 at 28.) They argue, however, that the administrative search exception is nevertheless inapplicable because the exception "applies only to regulatory inspections of closely regulated businesses" and "[b]ecause the primary purpose of tire chalking is the enforcement of parking laws." (*Id.* at 29–30.)

As an initial matter, the Court rejects Plaintiffs' assertion that the administrative search exception applies only to cases involving closely regulated businesses. Neither the Supreme Court nor the Ninth Circuit has explicitly narrowed the application of the administrative search exception in this manner. And Plaintiffs' cited cases make no express limitation on the administrative search doctrine.[3] While the Court recognizes that there is a separate line of administrative search case law in the context of closely regulated businesses, the Court declines to find that the exception is limited only to those cases.

---

[3] Plaintiffs primarily rely on *Tarabochia v. Adkins*, 766 F.3d 1115, 1122-23 (9th Cir. 2014). This case, however, is not analogous enough to Plaintiffs' case to be controlling. Unlike the City's tire chalking program, the search at issue in *Tarabochia* involved officers engaged in a "roving" automobile stop, which the Supreme Court deemed unconstitutional in *Delaware v. Prouse*, 440 U.S. 648, 661 (1979), and the officers' discretion to stop and search automobiles was not sufficiently cabined.

For example, in *United States v Davis*, the Ninth Circuit applied the administrative search exception where the government conducted warrantless, suspicionless "pre-boarding screening of all [airline] passengers and carry-on articles" which was "part of a general regulatory scheme in furtherance of an administrative purpose, namely, to prevent the carrying of weapons or explosives aboard aircraft, and thereby to prevent hijackings." 482 F.2d 893, 910 (9th Cir. 1973). Citing a series of Supreme Court and Ninth Circuit cases relating to administrative searches, the *Davis* court explained:

> The essence of these decisions is that searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime, may be permissible under the Fourth Amendment though not supported by a showing of probable cause directed to a particular place or person to be searched.

*Id.* at 908.

Contrary to Plaintiff's position that the administrative search doctrine requires a threshold showing of a "closely regulated business," the Ninth Circuit did not require such a showing or make such a finding in *Davis*. Instead, the *Davis* court simply noted that "[t]o pass constitutional muster, an administrative search must meet the Fourth Amendment's standard of reasonableness." *Id.* at 910; *accord United States v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1998), *as amended* (Nov. 16, 1998) ("While administrative searches are an exception to the Fourth Amendment's warrant requirement, they are not an exception to the Fourth Amendment's standard of reasonableness.").

As to the reasonableness standard, "[u]nfortunately, there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Davis*, 482 F.2d at 910 (quoting *Camara v. Municipal Court of S.F.*, 387 U.S. 523, 536–37 (1967)). Lastly, in the context of indiscriminate administrative searches, the lack of a warrant is not fatal where the decision to search is not "subject to the discretion of the official in the field" and requiring a warrant would "frustrate the governmental purpose behind the search." *Id.* (citing *Camara*, 387 U.S. at 532, 533).

These principles in *Davis* remain good law in the Ninth Circuit, and none of Plaintiffs' cited cases indicate otherwise.[4] Because Plaintiffs' case is analogous to *Davis*—both involve a blanket nondiscretionary search on a person's property—the Court finds *Davis* and its progeny, as well as Supreme Court cases concerning similar dragnet programs controlling in this case.[5] For instance, in *U.S. v. Martinez-Fuerte*, the Supreme Court upheld a brief warrantless, suspicionless seizure of all vehicles at a fixed immigration checkpoint. 428 U.S. 543, 545 (1976) ("We hold today that such stops are consistent with the Fourth Amendment. We also hold that the operation of a fixed checkpoint need not be authorized in advance by a judicial warrant."). Similarly, in *Michigan Dept. of State Police v. Sitz*, the Supreme Court upheld a brief warrantless, suspicionless seizure of all vehicles at sobriety checkpoints. 496 U.S. 444, 455 (1990) ("[T]he balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program."). And in *Delaware v. Prouse*, the Supreme Court suggested that a similar vehicle roadblock to verify drivers' licenses and registrations would be permissible to serve a highway safety interest. 440 U.S. 648, 663 (1979).

Finding the aforementioned cases instructive, the Court will consider whether the City's tire chalking is "conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime." *Davis*, 482 F.2d at 908. *See also City of Indianapolis v. Edmond*, 531 U.S. 32,

---

[4] *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) cited with approval the holding in *Davis* that suspicionless airport screenings do not violate the Fourth Amendment because they "are constitutionally reasonable administrative searches," but overruled a portion of the *Davis* decision relating to consent. That portion is of no consequence here. *See id.* at 962 ("To the extent our cases have predicated the reasonableness of an airport screening search upon either ongoing consent or irrevocable implied consent, they are overruled.").

[5] *See, e.g.*, *U.S. v. Bulacan*, 156 F.3d 963 (9th Cir. 1998); *U.S. v. McCarty*, 648 F.3d 820 (9th Cir. 2011). *See also City of Indianapolis v. Edmond*, 531 U.S. 32 (2000); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990).

38 (2000) (noting that the Supreme Court has never "indicate[d] approval of a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing."). Then, the Court will determine whether the administrative search is constitutionally permissible "by balancing the need to search against the invasion which the search entails." *Davis*, 482 F.2d at 910. *See also Prouse*, 440 U.S. at 654 ("[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.").

To begin, the Court finds that the City's practice of tire chalking is conducted as "part of a general regulatory scheme in furtherance of an administrative purpose," and "not as part of a criminal investigation to secure evidence of crime."[6] *Davis*, 482 F.2d at 908. The parties do not dispute that "[c]halking is a component of the City's parking enforcement operations used to enforce parking regulations governing time limited City Parking Spaces." (Doc. No. 27-5 at 5.)[7] The parties also do not dispute that "PEOs are trained to use chalk to enforce time limits during the field training they receive at the start of employment." (Doc. Nos. 27-1 at 11; 33 at 13.) The evidence therefore establishes that tire chalking is a part of the City's general parking regulations.

Additionally, Plaintiffs do not assert that the City's tire chalking is being used as a subterfuge for general crime search and investigation. *Bulacan*, 156 F.3d at 973 ("[C]ourts must guard against the danger that a permissible administrative search will be 'subverted into a general search for evidence of crime.'"). Thus, the primary purpose of tire chalking at a programmatic level is the administrative enforcement of parking regulations—not a

---

[6] The Court is not convinced by Plaintiffs' argument that enforcement of parking regulations is an improper purpose that precludes the City from establishing that it conducted a constitutionally permissible administrative search in this case.

[7] The statements in Mr. Tucker's declaration to which the Court cites in this decision have not been objected to by Plaintiffs. And because the Court does not rely on the evidence that Plaintiffs object to in reaching its decision, the Court need not consider Plaintiffs' objections. (Doc. No. 33 at 14–16.)

general interest in crime control or detecting evidence of criminal wrongdoing. *Cf. Edmond*, 531 U.S. at 48 ("Because the primary purpose of the Indianapolis checkpoint program is ultimately indistinguishable from the general interest in crime control, the checkpoints violate the Fourth Amendment."). Accordingly, the Court finds that the City's tire chalking program amounts to an administrative search that is permissible under the Fourth Amendment, so long as it is reasonable. *See Davis*, 482 F.2d at 908.

Turning then to the question of reasonableness, the Court balances the City's interest in the search against the intrusion the search entails. *See id.* at 910. Here, the City's interest in the search is legitimate and important because tire chalking furthers the administrative purposes of preventing widespread noncompliance with parking regulations, which in turn prevents cruising, double parking, and illegal parking. As the parties concede, cruising, double parking, and illegal parking lead to increased traffic congestion, which causes major negative public safety, environmental, and business impacts on the City of San Diego. Indeed, as stated in their brief, "Plaintiffs do not dispute the necessity or importance of enforcing time limits in City parking spaces." (Doc. No. 33 at 14.) And "Plaintiffs do not dispute that such interests are significant, or that they may be served through parking enforcement[.]" (*Id.* at 36.)

Regarding the invasiveness of the search, Plaintiffs have offered no evidence to rebut the City's claim that chalking of their tires involved a brief and minimal intrusion upon their privacy interest in the exterior of their vehicles. As the Supreme Court has recognized, the "search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building." *Almeida-Sanchez v. U.S.*, 413 U.S. 266, 279 (1973). On balance, the Court finds that that the City's practice of tire chalking is minimally intrusive and does not extend beyond that which is necessary to achieve the purpose of the search, that is, to determine whether a vehicle has overstayed the parking limitation. *See Davis*, 482 F.2d at 910. ("To meet the test of reasonableness, an administrative screening search must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it.").

Indeed, Plaintiffs do not dispute that the City's practice entails the placement of "an impermanent chalk mark of no more than a few inches on the tread of [a] vehicle' tires." (Doc. Nos. 27-1 at 12; 33 at 13.) "When chalking, the PEO makes minimal contact with the vehicle in a public place that lasts only a fraction of a second." (Doc. No. 27-5 at 6.) Moreover, the practice "does not track the actions of the driver beyond the fact of their presence on City property for the duration of the time the vehicle is parked in a City Parking Space." (*Id.*) Lastly, "the chalk used by PEOs rubs off the tire tread within a few rotations after the vehicle departs the City Parking Space." (*Id.*) On these facts, the Court finds that the City's search was a brief and minimal intrusion on the tire treads of Plaintiffs' vehicles, which is no more invasive than necessary to serve a legitimate and important administrative purpose.[8] *See Davis*, 482 F.2d at 910.

As a final note, it bears repeating that "reasonableness" is the ultimate touchstone of the Fourth Amendment. *Stuart*, 547 U.S. at 403. And its essential purpose is protecting against arbitrary intrusions by government officials. *See Prouse*, 440 U.S. at 653–54. The undisputed facts in this case simply does not support a finding that the City's nearly 50-year practice of placing a short, impermanent chalk mark on a vehicle's tire treads in furtherance of the City's parking regulations amounts to unreasonable or arbitrary government intrusion. As the record makes clear, the parking officers must mark every vehicle parked in City-owned spaces, and do not have discretion over which vehicles to mark. (Doc. No. 27-5 at 5.) *See Prouse*, 440 U.S. at 661 (noting that the Supreme Court has "insisted that the discretion of the official in the field be circumscribed, at least to some extent" to guard against the evil of "standardless and unconstrained discretion"). Relatedly, that the officers did not have a warrant for their search is not fatal because the City's program mandates

---

[8] To the extent that Plaintiffs assert that the City must show that "chalking must be the method used" to enforce its parking regulations (Doc. No. 33 at 36), they are mistaken. There is no such requirement. *See, e.g.*, *Sitz*, 496 U.S. at 453–54 ("[F]or purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.").

that they chalk vehicles in a nondiscretionary manner and requiring a warrant would frustrate the purpose of efficient parking enforcement. *See Davis*, 482 F.2d at 910.

Consequently, based on the foregoing, the City's tire chalking program is a reasonable administrative search, and therefore passes constitutional muster under the Fourth Amendment. *See id.* There being no constitutional violation in this case, Plaintiffs cannot establish their Section 1983 claim. *See West*, 487 U.S. at 48. As such, the City is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Sanchez*, 891 F.2d at 242 (The nonmoving party must come forward with "significant probative evidence tending to support its claim that material, triable issues of fact remain."). Accordingly, the Court will grant the City's motion for summary judgment and dismiss with prejudice Plaintiffs' complaint.[9]

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the City's motion for summary judgment. (Doc. No. 27.) In addition, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' Complaint. (Doc. No. 1.) The Clerk of Court is **DIRECTED** to **VACATE** the motion hearing on January 21, 2021 and close this case.

**IT IS SO ORDERED.**

Dated:  January 4, 2021

                                              Hon. Anthony J. Battaglia
                                              United States District Judge

---

[9] The City also argued that tire chalking is reasonable pursuant to the community caretaker exception to the warrant requirement, and because drivers impliedly license the chalking. However, as the City's search is constitutionally permissible pursuant to the administrative search exception, the Court need not consider these additional arguments.